**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICHOLAS ANTHONY CUSATIS,** | : | Civil No. 1:12-CV-791 |
| | : | |
| Petitioner | : | **(Judge Caldwell)** |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA BOARD OF** | : | |
| **PROBATION AND PAROLE,** | : | |
| | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I.   Introduction**

The petitioner in this case, Nicholas Cusatis, is a state parolee, a criminal recidivist, a former fugitive and a state parole violator. Cusatis, who is proceeding *pro se*, has filed a petition for writ of habeas corpus which contends that the Parole Board's decision recalculating his sentence following a series of admitted parole violations violates his constitutional rights. That Parole Board action, which Cusatis attacks in this petition, is specifically authorized by state law, which expressly provides that parolees who violate the terms of their parole forfeit credit for the time served on parole as a penalty for their wrongdoing.

For the reasons set forth below, it is recommended that this petition be denied, since Cusatis' complaints are untimely, Cusatis has failed to avail himself of the remedies provided by state law, and Cusatis is not entitled to use a writ of habeas corpus to compel state parole officials to deviate from the parole outcome mandated by state law, and by his own repeated misconduct.

## II.     Statement of Facts and of the Case

The tangled history of criminal conduct, flight, parole violations, arrests, and imprisonment which define the issues in the case began on February 23, 2006, when the Court of Common Pleas of Luzerne County sentenced Cusatis to a term of three to six years for robbery. (Doc. 7, ¶1.)  As a result of this conviction, the original minimum and maximum dates for Cusatis' sentence in this case were September 30, 2008, and September 30, 2011, respectively. (Id., ¶3.)  This original minimum and maximum sentence calculation reflected that Cusatis received pre-sentence credit for the period when he was held in custody from September 30, 2005, to February 23, 2006. (Id., ¶4.)  On May 21, 2009, the Parole Board paroled Cusatis from this sentence to the Hazelton Treatment Center. (Id., ¶5.)

Four months later, on September 23, 2009, Cusatis violated his parole when he absconded from the Hazelton Treatment Center, and his whereabouts remained unknown until the Hazelton City Police arrested him for new criminal charges on

November 10, 2009. (Id., ¶¶6-7.) These new criminal charge, which included weapons offenses and making false statements to police, were filed in the Court of Common Pleas of Luzerne County at CP# 4033-2009. (Id., ¶8.) Cusatis was unable to post bail on these criminal charges and the Parole Board lodged its detainer against Cusatis for parole violations on November 11, 2009. (Id., ¶¶9-10.) Five days later, on November 16, 2009, Cusatis waived his hearing rights and admitted to violating condition #2 (change of residence without permission) and condition #7 (failure to successfully complete the Minsec Hazelton program) of his parole. Based on these admission, the Board recommitted Cusatis as a technical parole violator for violating condition #2 and condition #7 of his parole. Cusatis was notified of this decision through a letter mailed to him December 28, 2009. (Id., ¶¶11-12.) On March 18, 2010, Cusatis also pleaded guilty to Possession of an Instrument of Crime and False Identification to Law Enforcement Officer at CP# 4033-2009 in the Court of Common Pleas of Luzerne County, and was subsequently sentenced to serve 9 to 18 months in the county prison for these new convictions. (Id., ¶¶13-14.)

These new convictions, in turn, led to new parole violation citations. Thus, on April 1, 2010, Cusatis waived his hearing rights and admitted to being convicted of Possession of an Instrument of Crime and False Identification to Law Enforcement in violation of his parole. Based on his admissions, the Parole Board recommitted

Cusatis as a convicted parole violator for the offenses of Possession of an Instrument of Crime and False Identification to Law Enforcement on May 7, 2010.  The May 7, 2010, revocation decision did not recalculate the maximum sentence date for Cusatis' sentence because he was required to serve his new county prison sentence before he could commence service of his original sentence.  Cusatis also received notice of this Parole Board action through the United States mails.  (Id., ¶¶15-17.)

On September 9, 2010, the Court of Common Pleas of Luzerne County paroled Cusatis from his new sentence and Cusatis was returned to a state correctional institution.  (Id., ¶¶18-19.)  Eleven days later, on September 30, 2010, the Parole Board mailed a parole violation sentence recalculation to Cusatis that changed his maximum sentence date from September 30, 2011, to January 18, 2013, based on his recommitment as a convicted parole violator.  This January 18, 2013, recalculated maximum date reflected that Cusatis forfeited credit for the period he was at liberty on parole from May 21, 2009, to November 10, 2009.  The January 18, 2013, maximum date calculation also reflected that Cusatis did not receive any credit on his parole violation sentence for the period he was incarcerated from November 10, 2009, to September 9, 2010, since Cusatis received credit on his new sentence at CP# 4033-2009 for the period he was incarcerated from November 10, 2009, to September 9, 2010. (Id., ¶¶20-23.)  The January 18, 2013, maximum date calculation further

reflected that Cusatis became available to commence service of his original sentence on September 9, 2010. (Id., ¶24.) This decision, which set forth the January 18, 2013, maximum release date, was mailed to Cusatis on September 30, 2010, and contained a clause stating, "IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER." (Id., ¶25.) Cusatis did not file a request for administrative relief within 30 days of the recalculation decision mailed September 30, 2010. Nor did he appeal the recalculation decision mailed September 30, 2010, to any Pennsylvania court. (Id., ¶26.)

Since the May 7, 2010, parole revocation, the Board has reviewed and denied Cusatis for reparole two times by decisions recorded August 30, 2011, and March 27, 2012. The March 27, 2012 parole denial also advised Cusatis that he would not be seen for parole review again on the Board's own motion before the expiration of his maximum sentence date on January 18, 2013. (Id., ¶¶28-29.) On May 7, 2012, and May 8, 2012, the Board received requests for administrative relief from Cusatis objecting to the January 18, 2013 maximum sentence date. The only claim raised in these requests for relief was that Cusatis was entitled to credit for time in the Hazelton program. On May 24, 2012, the Board mailed Cusatis a response dismissing his belated requests for administrative relief as untimely. (Id., ¶¶30-32.)

On April 27, 2012, Cusatis filed this petition for writ of habeas corpus.  (Doc.

1.)  At bottom this petition challenged the Parole Board's 2010 recalculation of his

parole violation sentence as arbitrary, and violated of double jeopardy principles.  (Id.)

This matter has been fully briefed by the parties, (Docs. 1, 7 and 9.) and is now ripe

for disposition.  For the reasons set forth below, it is recommended that the petition

be denied.

### III.  Discussion

### A.  State Prisoner Habeas Relief–The Legal Standard

A state prisoner seeking to invoke the power of this court to issue a writ of

habeas corpus must satisfy the standards prescribed by Title 28, United States Code,

Section 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

>> **(A)** the applicant has exhausted the remedies available in the courts of the State;

>> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### **(1.)** Substantive Standards Governing Section 2254 Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States", Section 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to Section 2254 relief, absent a showing that those violations

are so great as to be of a constitutional dimension. See, Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

### (2.) Procedural Thresholds for Section 2254 Petitions

#### (a.) Statute of Limitations

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that petitioners timely file motions seeking habeas corpus relief. The Antiterrorism and Effective Death Penalty Act of 1996("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See <u>Miller v. New Jersey State Dept. of Corrections</u> 145 F.3d 616, 617 (3d Cir.1998).

Beyond these tolling periods mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions; <u>Miller</u>, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling. <u>Id.</u> at 618-19. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." <u>Id.</u> at 618-19 (citations omitted). Indeed, it has been held that only:

[T]hree circumstances permit[] equitable tolling: if

(1) the defendant has actively misled the plaintiff,
(2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or

9

> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.
> Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. Courts have also repeatedly rejected claims by *pro se* litigants that the burdens of proceeding *pro se* should somehow exempt them from strict compliance with the statute of limitations. See, e.g., Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). Thus, while tardy habeas petitioners often invite courts to find extraordinary circumstances warranting equitable tolling, those invitations are rarely embraced by

the courts.  See, e.g., Merritt v. Blaine, 326 F.3d 157 (3dCir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002)(same).

### (b.) Exhaustion of State Remedies

In addition, under Section 2254 a petitioner must also show that he "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b)(2).  In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus.  See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).  A petitioner who has failed to properly pursue a claim in state court in accordance with state legal procedures can overcome this procedural bar to habeas relief only by showing either:  (1) both a valid cause for the procedural default and actual prejudice as a result of some violation of federal law; see, Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004), or (2) that the failure to review the petitioner's claim will inevitably "result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights.

O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

## B. **Cusatis' Petition Should Be Denied on Procedural and Substantive Grounds**

In this case the Parole Board asserts that there are both procedural and substantive obstacles to habeas corpus relief for Cusatis. At the outset, the Board argues that, to the extent that Cusatis seeks to challenge this 2010 recalculation decision, his petition is untimely under AEDPA's one-year statute of limitations. The Board further contends that Cusatis has failed to meet § 2254's exhaustion requirements, contentions that Cusatis has not contested through the filing of a traverse responding to these arguments.

We agree with the respondents that, to the extent that Cusatis attacks the 2010 parole violation sentence recalculation, it was incumbent upon him to timely exhaust his available state remedies. Indeed, it is well-settled that exhaustion of available state remedies is an absolute prerequisite to filing a federal habeas petition. 28 U./S.C. § 2254(b)(1). As the United States Court of Appeals for the Third Circuit has held "[i]t is axiomatic that a federal habeas court may not grant a petition for writ of habeas corpus . . . unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). As the person seeking to invoke habeas relief, Cusatis bears the burden of establishing that he has exhausted state remedies, Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). Yet,

it is undisputed that Cusatis did not pursue any state relief of his 2010 recalculation decision.

That failure to pursue available state remedies is now fatal to this petition. Since Cusatis has failed to exhaust his state remedies with respect to the parole board's action, his petition should be denied. Indeed, such petitions have routinely been denied in the past where, as in this case, it has been shown that the petitioner who is challenging a parole decision has not exhausted his other remedies before proceeding to federal court. See e.g., Warwick v. Miner, 257 F. App'x 475 (3d Cir.2007); Williams v. Winder, 232 F. App'x 177 (3d Cir.2007); Coady v. Vaughn, 251 F.3d 480 (3d. Cir.2001); Wilkinson v. Cameron, 3:10-CV-1435, 2010 WL 4791661 (M.D. Pa. Nov. 18, 2010).

Furthermore, to the extent that Cusatis seeks to collaterally attack this 2010 decision in a habeas corpus petition filed in April of 2012, his claims are time-barred by AEDPA's one-year statute of limitations. Since Cusatis did exercise any of his available state remedies with respect to this claim prior to proceeding to federal court he may not now avail himself of any of the forms of statutory tolling provided for by §2244(d). Moreover, since Cusatis had written notice of this state parole action, and his available state remedies, in September 2010, he is not entitled to equitable tolling of this limitations period. As the United States Court of Appeals for the Third Circuit

has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Miller, 145 F.3d at 618-19 (citations omitted). Cusatis' averments plainly do not meet this exacting standard.

Further, when we consider the merits of these claims we find that this petition fails because Cusatis has not identified state conduct in this case which violates "the Constitution or laws or treaties of the United States" and led to a fundamental defect which inherently resulted in a complete miscarriage of justice in a fashion which was completely inconsistent with rudimentary demands of fair procedure. Fairly construed, Cusatis' petition simply challenges the fashion in which the parole board revoked, recalculated and extended his term of incarceration following his repeated parole violations.

State inmates like Cusatis frequently invite federal courts to revisit discretionary parole determinations by challenging those parole decisions on due process grounds. Yet these invitations are rarely embraced by the courts. Thus, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials

offend constitutional due process, and have denied habeas relief to such petitioners. See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).

These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole). These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993). Therefore,

Foster may not premise his habeas petition on a claim of some constitutional entitlement to parole.

Recognizing this fact, in this case Cusatis' petition seems to attack another aspect of the parole process: the fact that, under certain circumstances, state law calls for the forfeiture of time spent on parole by criminal recidivists like the petitioner who violate their parole supervision. See 61 Pa. C.S. §§ 6138(a)(2) and (c)(2). Thus, at bottom, Cusatis' petition launches a constitutional challenge to the entire structure of Pennsylvania's parole statute. The difficulty with this claim is that it is well-established that this aspect of Pennsylvania's parole statute is constitutional. See United State ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970)(rejecting Eighth Amendment and due process claims). Indeed, for the past twenty-five years federal courts have expressly considered the provision of state law challenged by Cusatis, which permits the recalculation and extension of parole release dates for recidivists who violate the terms of their release, and have held that "[n]o [federal] constitutional question is involved in the Parole Board's failure to give relator credit for time on parole and its adjustment of the expiration date of his new maximum." See United States ex rel. Heacock v. Myers, 367 F.2d 583 (3d Cir.1966) (expressing "complete accord" and affirming opinion of district court in United States ex rel.

Heacock v. Myers, 251 F.Supp. 773, 774 (E.D.Pa.1966)). As this court observed more than twenty years ago when it disposed of a similar inmate complaint:

> Petitioner contends that in taking away his "street time" the Board unlawfully extended his maximum sentence in violation of his rights under the Fifth and Fourteenth Amendments. [The Pennsylvania State parole statute], directing the Pennsylvania Board of Parole to give a recommitted, convicted parole violator no credit for time spent on liberty while on parole, has withstood numerous constitutional challenges in the federal courts. [This statute] has been held not to violate the due process and equal protection guarantees of the federal constitution, and not to violate the constitutional prohibitions against double jeopardy, bills of attainder, cruel and unusual punishment or ex post facto laws. See also, United States ex rel. Heacock v. Myers, 251 F.Supp. 773 (E.D.Pa.1966), aff'd per curiam, 367 F.2d 583 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967); United States ex rel. Brown v. Pennsylvania Board of Parole, 309 F.Supp. 886 (E.D.Pa.1970); Gomori v. Maroney, 196 F.Supp. 190 (W.D.Pa.1961), aff'd, 300 F.2d 755 (3d Cir. 1962). In view of the foregoing authorities, the Court finds petitioner's contention without merit.

Choice v. Pennsylvania Bd. of Parole, 448 F.Supp. 294, 298 (M.D.Pa.,1977)(footnotes and citations omitted).

These observations remain as pertinent and compelling today as they were in 1977, and continue to rebut any habeas challenge to the Parole Board's compliance with state law, which refuses to reward parole violators with credit for time spent on parole. Moreover, in this case the Parole Board persuasively demonstrates that the calculation of this forfeited parole time was careful, accurate and wholly in accord with state law. Therefore, we find no error in this parole expiration date recalculation.

Finally, Cusatis' double jeopardy argument is also unavailing since it has long been held that: "The revocation of a suspended sentence . . . followed by the imposition of a prison sentence does not subject a [parolee] to double jeopardy. Pollard v. United States, 352 U.S. 354, 359-361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1954); Dunn v. California Dept. of Corrections, 401 F.2d 340, 342 (C.A.9, 1968); Thomas v. United States, 327 F.2d 795, 797 (C.A.10, 1964), cert. den. 377 U.S. 1000, 84 S.Ct. 1936, 12 L.Ed.2d 1051.  See also Commonwealth v. Vivian, 426 Pa. 192, 201, 231 A.2d 301 (1967)." U. S. ex rel. Sole v. Rundle, 435 F.2d 721, 724 (3d Cir. 1971).

In short, the extension of this parole date does not constitute a violation of a fundamental constitutional right owed to the petitioner.  Rather, this action represents a straightforward application of a constitutionally valid state law to the repeated misdeeds of a felon, and recidivist.  In the court's view, rather than reflecting arbitrary action, this parole board judgment appears to represent a careful, informed balancing of the interests of both the inmate and society.  It was, therefore, the very essence of informed decision-making which is the duty and responsibility of the Parole Board.  Since nothing in this Parole Board decision offends the constitution or laws of the United States, this petition for writ of habeas corpus should be denied.

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of August 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge